IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HARVEY EUGENE PRITCHETT, #308444          *

           v.                    *     CIVIL ACTION NO. AMD-06-213

JAMES S. SMITH, et al.                              *

                                ***

MEMORANDUM

On January 25, 2006, the Clerk received for filing Harvey Eugene Pritchett's 28 U.S.C. §

2254 action attacking his 2001 convictions and sentences imposed in Prince George's County Circuit

Court for attempted first degree murder and related offenses. Paper No. 1.  Respondents  filed an

answer and petitioner filed a traverse.  Paper Nos. 9 and 17.

After consideration of the pleadings and exhibits, the court sees no need for an evidentiary

hearing.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts;*

*see also* 28 U.S.C. § 2254(d) & (e)(2).  For the reasons stated within, the petition is hereby denied

and dismissed with prejudice.

I. Procedural History

On December 12, 1995, an indictment was filed charging petitioner with attempted murder,

assault with intent to murder, malicious shooting, assault with intent to maim, assault with intent to

disable, and use of a handgun in commission of a felony or a crime of violence.  Paper No. 9, Ex.

1. According to the Court of Special Appeals of Maryland, the following facts were adduced at

petitioner's trial.

> On November 7, 1995, Samuel Wright and his half brother, Joseph McGee,
> drove to a day care center in Washington, D.C., to pick up Sharee Pleasant's young
> daughter.  Pleasant was Wright's ex-girlfriend and was living with McGee.[1] McGee

---

[1]Although not entirely clear from the record, it appears that [Pritchett] is the girl's father.

went inside to collect the girl while Wright waited in his truck. Wright eventually noted that [Pritchett], whom he knew as "Gene," was at the day care center and "messing with the baby." Wright remained in the truck and did not speak to [Pritchett].

That evening, Wright was at McGee's apartment with his friend Michael Huff, and Pleasant. When Wright went outside to his truck to retrieve something for Huff, [Pritchett] drove up, stopped, approximately four feet away, and asked: "Hey, man, where that girl?" [Pritchett] then pointed a gun at Wright and Wright "jumped" and ran for cover behind his truck. As he ran, Wright felt something hit him and then he had "no more feeling." Wright also heard bullets hit his truck. Wright testified that, although he had been convicted in 1993 of carrying a pistol without a license in Washington, D.C., at no point during that day did he have a gun. He also denied pointing a gun at [Pritchett]. Wright was left paralyzed and unable to walk.

Michael Huff testified that, on the evening in question, he was walking outside with Wright when he heard four shots. Huff ducked down and saw a gray car drive away, but he was unable to see who was driving. Huff then saw Wright on the ground, and Wright yelled to him that "Gene shot me." Huff further testified that Wright did not have a gun in his possession that day.

Prince George's County Police Officer Ernest Prevost responded to the scene of the shooting. Officer Prevost was told that [Pritchett] shot Wright, although he was unable to recall whether Wright or Pleasant gave him that information. Two bullets were recovered from the driver's side door of Wright's truck.

[Pritchett] testified in his own defense that, on the date in question, he had stopped by the day care center to visit his daughter. He was in his car when Wright pulled up and double-parked, thus blocking [Pritchett's] exit. When McGee came out with the girl, [Pritchett] approached McGee and stated that he was not looking for trouble but that he wanted to speak to the baby. [Pritchett] did not speak to Wright, but he stated that Wright displayed a gun while he sat in his truck. After Wright drove away, [Pritchett] went to his home, which was in Washington, D.C.

Several hours later, [Pritchett] was driving around with a cousin, searching for an address that they could not find. Eventually, they ended up in a parking lot and [Pritchett] spotted Wright's truck. As they were giving up the search and leaving the area, [Pritchett] saw Wright. According to [Pritchett], Wright also spotted him and started to pull a gun from his belt. [Pritchett] then retrieved his gun from under the armrest and started shooting out the window. [Pritchett] stated that he did not go to the parking lot in search of Wright and that he acted only to protect himself.

2

Following the shooting, [Pritchett] fled to South Carolina and then Philadelphia, where he was apprehended in 1999.[2]

[Pritchett] also testified that he and Wright had a history of "altercations." [Pritchett] stated that every time he and Wright met "something would happen."

Paper No. 9, Ex. 6

On March 22, 2001, a jury convicted petitioner of attempted first degree murder, malicious shooting, assault with intent to disable, and use of a handgun in the commission of a crime of a felony or a crime of violence.[3] Paper No. 9, Exs. 1 & 3.  That same date, the judge sentenced petitioner to life imprisonment with all but fifty years suspended for the attempted murder, a consecutive 15-year sentence for the malicious shooting, a concurrent 15-year term for the assault with intent to disable, and a consecutive five-year term for use of a handgun.[4]  *Id.*

In his appeal to the Court of Special Appeals of Maryland, petitioner raised the following claims:

1.      The trial court erred in failing to merge appellant's convictions for malicious shooting, assault with intent to disable, and attempted first degree murder;

2.      The evidence was insufficient to sustain appellant's convictions;

3.      Appellant's Fifth and Sixth Amendment Due Process rights violated by being tried, convicted and sentenced to a crime not charged in the indictment; and

4.      The trial court did not have jurisdiction to try, convict, and sentence appellant for a crime not charged in the indictment.

*Id.*, Exs. 4-6.

_____

[2]The trial of this case took place on March 21-22, 2001.

[3]At the conclusion of petitioner's case, the State agreed to nol pros the assault with intent to maim charge. Paper No. 9, Ex. 2 at 160.

[4]The cumulative state sentence was imposed consecutive to the federal sentence petitioner was serving at that time.  Paper No. 9, Ex. 3 at 33 & 34.

On December 18, 2002, the Court of Special Appeals granted relief as to petitioner's first claim, which resulted in the merger of his malicious shooting and assault with intent to disable convictions into his attempted first degree murder conviction. Paper No. 9, Ex. 6. Petitioner's criminal judgment was otherwise affirmed. *Id*.

Petitioner filed a petition for writ of certiorari with the Court of Appeals of Maryland and abandoned two of his previous four appellate claims, raising the following two questions for review:

1.    Were appellant's Fifth and Sixth Amendment Due Process rights violated by being convicted of a crime not charged in the indictment; and

2.    Did the trial court have jurisdiction to try, convict, and sentence appellant for a crime not charged in the indictment.

*Id*., Ex. 7. On April 11, 2003, the Court of Appeals denied the petition for writ of certiorari. *Id*., Ex. 8.

On October 31, 2003, petitioner filed a post-conviction petition in the Circuit Court for Prince George's County. *Id*., Ex. 9. The petition, subject to supplementation, alleged that trial counsel was ineffective for failing to: (1) notice that the indictment was missing the signature of the State's Attorney or of other persons authorized to do so as required under Maryland law; (2) adequately investigate the history of confrontations between petitioner and Samuel Wright and to incorporate that history into a trial strategy of self-defense; (3) locate and subpoena the investigative officer to testify; and (4) raise the issue of petitioner's right to a speedy trial. *Id*., Exs. 9 & 10. Petitioner also raised an additional ineffective assistance claim, alleging that appellate counsel was ineffective for failing to challenge the validity of the indictment. *Id*. Ex. 9.

On January 18, 2005, a post-conviction hearing was held before Judge Melanie Shaw Geter. *Id*., Exs. 1 & 11. On March 2, 2005, Judge Geter denied post-conviction relief. *Id*. Petitioner filed

4

an application for leave to appeal, alleging post-conviction court error as to the following claims:

(1) the State's failed to sign his indictment and (2) counsel was ineffective for failing to: (i) raise a

speedy trial claim; (ii) locate and subpoena the investigative officer; and (iii) adequately investigate

the confrontational history between petitioner and Wright.  Paper No. 9, Ex. 12.  On December 13,

2005, the Court of Special Appeals summarily denied the application for leave to appeal.  *Id.*, Ex.

13.  The appellate mandate issued on January 17, 2006.  *Id.*

Petitioner filed this § 2254 application soon after the issuance of the state court mandate.

He claims that:

1.  His Fifth, Sixth, and Fourteenth Amendment rights have been violated by being tried, convicted, and sentenced without a legally binding indictment being issued;

2.  His Fifth and Fourteenth Amendment rights were violated when the State proceeded without a legally signed and binding true bill;

3.  He was denied effective representation by appellate counsel who failed to raise the issue of an invalid indictment and true bill;

4.  He was denied effective representation by trial counsel who failed to raise the issue of petitioner's right to speedy trial;

5.  His Fifth Sixth and Fourteenth Amendment rights were violated when he was tried convicted and sentenced for a crime that was not charged in the indictment;

6.  The sentencing court did not have jurisdiction to try, convict, or sentence petitioner for a crime that was not charged in the indictment; and

7.  He was denied effective representation by trial counsel who failed to adequately investigate the history of violence between the victim (Wright) and petitioner.

Paper No. 1 at Attachment, Question 15.[5]

_____

[5]Affording the petition a generous construction, it appears that petitioner is attempting to raise two issues that were not previously presented to the state courts: that (1) his due process rights were violated when the

II. Threshold Considerations

A.

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he is required to exhaust each claim presented to the federal court by pursuing all available remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by proceeding with certain claims on direct appeal to the Court of Special Appeals (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of a post-conviction petition, followed by seeking leave to appeal from the Court of Special Appeals.  Petitioner no longer has direct appeal or post-conviction remedies available in connection with the claims raised before this court.  He has exhausted the claims presented here.

B.

There is no contention that the petition is time-barred pursuant to 28 U.S.C. §2244(d).

C.

In their answer, respondents state that petitioner is procedurally defaulted from asserting his claims under grounds one, two, and three and the additional grounds that petitioner acknowledges were never argued in the Maryland courts.  These claims go to: (1) the legality of the indictment; (2) the legality of the true bill; (3) appellate counsel's failure to raise the issue of the indictment and true bill; (4) the trial court's instructions to the jury on attempted first degree murder; and (5)

---

trial judge gave partial jury instructions in response to the jury's inquiry regarding first degree murder and (2) his attempted first degree murder conviction was obtained by use of a charge that is not on the books in Maryland.  Paper No. 1 at Attachment, Question 16.

whether attempted first degree murder is a crime under Maryland statute.   The court agrees with respondents that these grounds were not raised on direct appeal or post-conviction review and that the ground first raised in the post-conviction court had been abandoned at the appellate level.   The claims are therefore procedurally defaulted

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971).  In *Wainwright v. Sykes*, 433 U.S. 72 (1977), the Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting from the failure.  Thus, claims which have never been presented in the state courts--or claims which were not exhausted properly in the state courts--are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules.   *See Collier v. Jones*, 910 F.2d 770 (11th Cir. 1990). This procedural bar applies when the state court has found procedural default regardless of whether it has also discussed the merits, as long as the court has explicitly invoked state procedural rule as the basis for its decision.  *See Harris v. Reed*, 489 U.S. 255, 264, n.10 (1989); *Ahe v. Styles*, 39 F.3d 80 (4th Cir. 1994). The *Harris* Court emphasized that a federal court has the responsibility to determine whether a state court in fact based its denial of relief on procedural grounds.

Even where a claim has been procedurally defaulted,  this court must still consider whether it should reach the merits of the defaulted claim in order to prevent a fundamental miscarriage of justice.  *See Schlup v. Delo*, 513 U.S. 298 (1995).  The miscarriage of justice standard is directly linked to innocence.  *Id*. at 320.  Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are

defaulted. *Id*. at 314. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup, supra*. To meet this standard a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327.[6]

> *Schlup* observes that
>
> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.

*Id*. at 323.

On June 1, 2006, the court entered an order affording petitioner an opportunity to demonstrate the existence of cause for his failure properly to raise his claims in the state courts and prejudice resulting from this failure. Paper No. 10. In response, petitioner essentially argues that respondents have, by presenting alternative arguments on the merits, confirmed the basis for the claims raised as to two grounds. Paper No. 17 at 7 & 8. He further asserts that he argued the issue of the "unsigned indictment" at post-conviction review and in his motion for new trial filed in the circuit and appellate courts. *Id*. at 8. Petitioner also states that while he did not raise the issue in his application for leave to appeal the post-conviction decision, there is still a central question of

---

[6]Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). A petitioner who wishes to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

whether the indictment was issued without a required signature and whether appellate counsel missed the issue. *Id*. at 12 & 13. Finally, he states that he added new grounds in the petition simply because a section of the form asked if "there were any previously unraised issues." *Id*. at 17.

The undersigned finds that petitioner has failed to make the requisite showing which would enable this court to consider his procedurally defaulted claims. He has not suggested that evidence exists which could satisfy the difficult standard set forth in *Schlup*. Petitioner's procedurally defaulted claims are, therefore, foreclosed from federal habeas review.[7]

III.  Standard of Review under § 2254

Because this petition was filed after April 24, 1996, it is to be decided under amendments to the habeas corpus statutes contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001).   AEDPA modified the federal court's role in habeas proceedings in order to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent possible under law.  *See Bell v. Cone*, 535 U.S. 685, 693 (2002).  Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

---

[7]Even if petitioner's grounds concerning an alleged deficiency in the charging document had been properly raised or exhausted, they would entitle him to no relief.  Petitioner alleges that the charging document was not properly signed.  As noted by the post-conviction court, however, the charging document filed in the court record was in fact signed by the State's Attorney. Paper No. 9, Ex. 11 at 8. In any event, petitioner has failed to show that any deficiencies or variances in the state court indictment rendered his trial proceeding so egregiously unfair as to amount to a deprivation of his right to due process. *See Ashford v. Edwards*, 780 F.2d 405, 407 (4th Cir. 1985). In addition, he raises the issue of a deficient charging document in the context of ineffective assistance of appellate counsel. In light of the record before the court, petitioner has failed to establish that appellate counsel's performance was deficient in failing to raise the issue and that but for the deficient performance, there was a reasonable probability he would have prevailed on appeal.  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (to establish deficient performance of appellate counsel, petitioner must demonstrate that counsel "unreasonably failed to discover non-frivolous issues" and to subsequently raise them and that such failure prejudiced his appeal).

1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curium*). In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

Federal courts must give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness.

A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## VI.  Analysis of Non-Defaulted Claims

With the above standards in mind, the court will address the merits of petitioner's remaining non-defaulted claims.

### A.

Petitioner argues that his Fifth, Sixth, and Fourteenth Amendment rights were violated when he was tried convicted and sentenced for a crime that was not charged in the indictment.  He further asserts that the trial court lacked jurisdiction to try, convict, or sentence him for a crime that was not charged in the indictment. Both claims were raised and exhausted on direct appeal.

On direct appeal petitioner claimed that because the caption of the indictment alleged only "attempted murder," he was not properly charged or placed on notice of the crime of attempted first degree murder for which he was convicted. The Court of Special Appeals of Maryland found that the charging document was sufficient to secure the conviction and that the State properly set forth each element of attempted first degree murder in the body of the indictment. Paper No. 9, Ex. 6 at 12-14. The Court of Special Appeals further held that as petitioner was properly charged with attempted murder, which included the offense of attempted first degree murder, the trial court had jurisdiction to try, convict, and sentence petitioner for that offense.  *Id.*, Ex. 6 at 14.

These grounds  unquestionably implicate due process. *See Ashford v. Edwards*, 780 F.2d 405, 407 (4th Cir. 1985) (to comprise a due process violation deficiencies in charging document must render trial egregiously unfair); *see also Hartman v. R.C. Lee*, 283 F.3d 190, 194 (4th Cir. 2002) (Sixth Amendment due process requires that an accused be informed of the nature and cause of the

specific charge made against him).   The appellate court noted that the indictment sufficiently charged petitioner with the crime of attempted first degree murder as all the elements of attempted first degree murder were contained in the charging  document.  There is no demonstration that the indictment as written was so inadequate as to not place petitioner on notice that he was being prosecuted for attempted first degree murder or that any deficiencies in the indictment rendered trial unfair.  The determination of the Court of Special Appeals shall not be overturned.

B.

Petitioner alleges that defense counsel provided ineffective representation due to her failure to raise the issue of petitioner's  right to speedy trial and to adequately investigate the history of violence between petitioner and victim Samuel Wright.   To establish a claim of ineffective assistance of counsel under *Strickland  v. Washington*, 466 U.S. 668 (1984), a convicted defendant must demonstrate that his counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. *Id*. at 688, 692. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686.  The ultimate focus of the *Strickland* inquiry is on the "fundamental fairness of the proceeding whose result is being challenged." *Id*. at 696.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, a court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688.  In its analysis, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal

12

quotations omitted).   A court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable. *Id*. at 690.

With regard to the prejudice prong of *Strickland*, a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

In her post-conviction decision, Judge Geter applied the standard under *Strickland* and found no merit to petitioner's ineffective assistance claims. With regard to the claim that trial counsel was ineffective for the failure to raise a speedy trial issue, Judge Geter made the following observations:

> Under the five-factor test in *Wingo*, the petitioner's sentencing and trial in Prince George's County was not a violation of his speedy trial rights.  The petitioner was responsible for much of the delay.  By his own admission, the petitioner absconded for over three years to South Carolina and Pennsylvania after the 1995 incident in Maryland. Due to these events, Prince George's County was unable to obtain jurisdiction and bring the petitioner to trial in a timely manner.  If the petitioner had not absconded, it is likely that he would have gone to trial within the appropriate time limits.

> Finally, the petitioner's trial in Prince George's County, Maryland took place within the time limits mandated by the "Interstate Agreement on Detainers" Act (IAD). West Ann. Md. Code, Correctional Services, §§ 8-402 to 8-411.  According to § 8-406 (c), a prisoner's trial must commence within 120 days of the arrival of the prisoner in the receiving state.  In this case, Prince George's County gained custody of the petitioner on November 24, 2000.  In order to satisfy the IAD, the petitioner's trial had to take placed before March 24, 2001, approximately 120 days after November 24, 2000.  Here, the IAD is satisfied because petitioner's trial occurred before March 24, 2001, as it took place on March 21 to March 22, 2001.  Thus, trial counsel rendered effective assistance by not addressing this issue.

Paper No. 9, Ex. 11 at 10-11.

The undersigned finds that Judge Geter's decision is supported by the record. Review of a petitioner's speedy trial claim necessitates examination of the length and reason for delay and whether petitioner asserted his speedy trial right and was prejudiced by the delay. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972).   Petitioner was indicted in December 1995.  After the shooting, he fled to South Carolina and then to Pennsylvania.  It is undisputed that he remained a fugitive for three and one-half years. Petitioner was arrested by federal authorities in May 1999, and convicted and sentenced in federal court in November of 1999.[8]  He was remanded to the custody of Prince George's County authorities by the U.S. Bureau of Prisons in November 2000 and he proceeded to trial in March of 2001.

While the length of the delay in bringing petitioner to trial was presumptively prejudicial, the delay was not  unreasonable given that petitioner was responsible for a substantial portion of the delay.  This Court "need not ignore a defendant's fugitivity in considering whether there has been a violation of his Sixth Amendment right to a speedy trial." *United States v. Ingram*, 446 F.3d 1332, 1337 (11th  Cir. 2006) (*quoting Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir. 1988)). Moreover, petitioner has failed to show that his defense was impaired by the delay.  Petitioner has never argued that witnesses were  unavailable as a result of the delay, nor has he alleged that any witness was unable accurately to recall the events in question. Further, petitioner does not contend that any exculpatory evidence was lost, nor has he identified any evidence that was unavailable because of the delay.

As to petitioner's claim that defense counsel failed to adequately investigate the history of violence between petitioner and victim Samuel Wright, Judge Geter wrote:

---

[8]*See United States v. Pritchett*, Criminal No. JG-99-0340 (E.D. Pa.).

In the instant matter, the transcript indicates that trial counsel adequately investigated the history between petitioner and Mr. Wright. In trial counsel's opening statement, she commented that, "Prior to [the 1995 assault against Mr. Wright], back in 1993, Mr. Wright had . . . assaulted Mr. Pritchett and a handgun was involved. So that was their background. They were both involved with the same woman." Further, trial counsel explained that the jury needed to understand the petitioner's frame of mind considering that he "encountered [Mr. Wright] at least twice before with a weapon." This issue was also explored during the testimony of the victim and through direct and cross-examination of the petitioner.

The transcript indicates that the petitioner provided extensive details to the jury concerning the history of confrontation between the petitioner and Mr. Wright. The dialogue between the State's Attorney and the petitioner was as follows:

| | |
|---|---|
| State's Attorney: | Now, you and Wright had prior altercations, right. There was an incident in which you got into a fight and you bit his finger, right? |
| Petitioner: | I went to visit Ms. Pleasant, and as I was approaching the steps. Mr. Wright was coming down the steps, and I spoke to him and he said, "You had me locked up." And he hit me. And we had a fight out there then, and which he had a hold on me, and the way he was holding me his finger was right there and I bit his finger. |
| State's Attorney: | There was a time in which you broke his car windshield? |
| Petitioner: | When I broke his car windshield, that was during that time. |
| State's Attorney: | That was during that time? |
| Petitioner: | Yes. |
| State's Attorney: | Right after that fight was over? |
| Petitioner: | Yes. |
| State's Attorney: | Then there was another incident in which you hit him in the face? |
| Petitioner: | No, I think he hit me. |
| State's Attorney: | He hit you? |

| Petitioner: | Yeah.  We had several altercations.  Look like every time we run into each other it was [like] something happen, you know. I even told her, look here, you go along with this guy and let me go on about my life and stuff like that. |

Thus, the petitioner's own testimony shed light on the considerable history of confrontation between himself and Mr. Wright.   He explained the details of at least two prior disputes between himself and Mr. Wright, and further declared that they had "several altercations" in the past.

Trial Counsel's opening statement that addressed the considerable history between the petitioner and Mr. Wright, coupled with the victim's and petitioner's detailed testimony to the jury renders the petitioner's allegations meritless.  Even if trial counsel decided to mention the history of confrontation, her decision would have been reasonable so long as it was based on sound strategy.  See *Oken v. State*, 343 Md. 256, 681 A.2d 30 (1996).  Thus, the petitioner has failed to satisfy the *Strickland* two-prong test and his allegation is without merit.

Paper No. 9, Ex. 11 at 4-6.

The post-conviction court's findings are reasonable under Supreme Court precedent.  The trial transcript record shows that defense counsel was fully aware of the history of confrontations between petitioner and Wright and that this history was laid bare in argument and witness testimony in an attempt to bolster petitioner's claim of self-defense.  Counsel's performance was not deficient on this issue.

Further, petitioner has failed to demonstrate any prejudice.  The evidence showed that: (1) petitioner filed multiple shots at Wright while Wright was standing by his truck; (2) no weapon was found on Wright or in the immediate area of where he was shot; and (3) Wright was shot in the back. Any additional investigation into the history of confrontational encounters between Wright and petitioner would not have made petitioner's self-defense argument any more availing.  Judge Geter's decision shall not be overturned.

16

IV. Conclusion

In light of the foregoing, the court finds no basis to deviate from the appellate and post-conviction decisions of the Maryland courts.  Accordingly,  this petition for habeas corpus relief shall be denied and the case shall be dismissed with prejudice.  A separate Order follows.


Date: September 28, 2006                    __/s/_____
                                            Andre M. Davis
                                            United States District Judge